**In re Montgomery**

*Charles Potash* and *James J. Garrity,* for petitioner.

*Henry L. Menin,* for respondents.

TAXIS, *J.,* May 11, 1979—Cheltenham Town-

ship School District has petitioned this court to vacate its decree of August 18, 1978, appointing Dr. Ernest Williams and his wife, Barbara Ann Williams, as guardians of the person of a minor, Dione Joy Montgomery, six years of age. Petitioners have further requested that the court order the Williams and the natural mother, Inge Montgomery, to reimburse the school district for the reasonable costs of tuition expended for Dione during the 1978-1979 school year, investigation costs, court costs, and attorneys' fees.

The record from the hearing of August 18, 1978, establishes that the Williams reside at 7305 North Twelfth Street, Cheltenham, which is within the boundaries of petitioner. The natural mother resides at 1654 Mayland Street, Philadelphia, which is not within the boundaries of petitioner. By this court's decree of August 18, 1978, Dione became entitled to attend the schools of petitioner as ward of the resident guardians.

With respect to this proceeding, the petition avers that: in September, 1978, Dione was admitted to and did attend the Myers Elementary School, which is located within the boundaries of petitioner; that the minor did not, in fact, reside with her court-appointed guardians; that the original petition for guardianship was for the sole purpose of "manufacturing" a residence to comply with section 13-1302 of the Public School Code of March 10, 1949, P.L. 30, as amended, 24 P.S. §13302, so that the minor could attend the schools of petitioner.

At the time of hearing on April 20, 1979, respondents did not appear and their counsel informed the court that respondents knew of the hearing. Petitioner submitted testimony through Meade Palmer, the home and school visitor for petitioner, who

stated that he enrolled the minor on the basis of this court's decree. After becoming aware that a question of residence existed, Mr. Palmer hired a private investigator to determine actual residence. Mr. Palmer further testified to tuition costs of $10.62 per day, $33.33 for a substitute teacher for a witness, $378 for investigation costs plus an additional fee for the investigator's court appearance, and legal fees.

Laura Johnson, the minor's teacher, testified that she submitted a written report to Mr. Palmer, detailing her observations, and that report was admitted. The report indicates that the minor related many personal facts about her life at home with her natural family; that Dione's mother helped her "at home" with her school assignments; that Mrs. Montgomery and Mrs. Williams took turns picking her up from school; that in January Dione said that she would walk to the Williams' home and that her mother would pick her up there; and that the minor said that she never spent the night at the Williams' home. The teacher also observed that of six absence notes received at school, two of them were signed by Dione's mother; that the mother signed two permission slips and paid for Dione's school pictures; that both Dione's mother and Mrs. Williams have attended conferences and school nights; and that the mother has picked Dione up at school.

Since the report, Mrs. Johnson testified that she received a note from the natural mother requesting that because of religious belief, Dione not participate in Valentine's Day activities; that the minor's natural brother has brought her lunch to school for her; that the witness had received absence notes from both the natural mother and Mrs. Williams;

and that both the natural mother and Mrs. Williams had signed the assigned homework sheets.

Petitioner also submitted the testimony and report of Richard A. Moll, a licensed private investigator, who observed that the minor, on six random mornings in October, November, January, and February, left her home, transported by her mother, and went to school. On several occasions they stopped at the Williams' to pick up the Williams children. The witness testified that he verified that the days when he did not see the child were days when she was absent from school. Mr. Moll never observed the child leaving the Williams' home. The child was identified as Dione and the car in which the child was transported was positively identified as belonging to the natural mother.

Section 13-1302 of the Public School Code provides that a child shall be considered a resident of the school district in which its parents or the guardians of his person reside and will therefore be entitled to free school privileges. That section further provides that where the child is not the natural child of the guardian, there is a requirement of "supporting the child gratis as if it were his own." Furthermore, there is a requirement that the resident file a sworn statement that he is a resident of the district; that he is supporting the child gratis; that he will assume all personal obligations for the child relative to school requirements; and that he intends to keep and support the child continuously and not merely through the school term.

The implication of the section is that one who does not fit the statutory requirements is required to pay tuition. Section 13-1316 states that the board of school directors of any school district may permit nonresident pupils to attend the public schools in its

district, upon such terms as the Board may determine, subject to the provisions of the act. In addition, section 13-1301 provides that the school board may admit to the schools a non-resident student temporarily residing in the district, with or without the payment of tuition. In section 25-2561, the code further sets out the method for calculating the tuition charge.

This court has previously held that a parent's desire to "manufacture" residence for a child within a certain school district in order to seek what the parent deems a better education for the child is an insufficient and improper reason for the appointment of a guardian: Mattox, Minor, 28 Fiduc. Rep. 635 (1978). The court finds that the residence of Dione Joy Montgomery was manufactured; that the appointed guardians were not bona fide; and that therefore the minor was not entitled to free school privileges within the Cheltenham Township School District. Tuition charges will be assessed against the guardians and the natural mother beginning in September, 1978, according to section 13-1316 of the Public School Code.

Petitioner has also requested the payment of costs and attorneys' fees. Section 1726 of the Judicial Code of July 9, 1976, P.L. 586, 42 Pa.C.S.A. §1726, states the general rule that attorneys' fees are not an item of taxable costs, subject, however, to the exception set out in section 2503(9). Section 2503(9) furnishes the statutory exception for the award of counsel fees as part of the taxable costs of the matter, stating: "The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter: . . .[if] (9) Any participant who is awarded counsel fees because the conduct of another party in commencing the

matter or otherwise was arbitrary, vexatious or in bad faith."

The court enters the following

## DECREE

And now, May 11, 1979, the decree of August 18, 1978, appointing Dr. Ernest Williams and Barbara Ann Williams guardians of the person of Dione Joy Montgomery is vacated. Dr. and Mrs. Williams and Inge Montgomery are directed and ordered to reimburse the Cheltenham Township School District for the cost of tuition from September, 1978, at the rate of $10.62 per day, investigation costs of $446.85 and counsel fee of $540.